Good morning, Your Honors. My name is Dave Chen. With me is John Sten, and we represent the appellant in this case, Maya May. And may I please the court, I'd like to reserve one minute for rebuttal. You may have it. A little less than a year ago, my client moved her son from Argentina to the United States pursuant to an agreement she had reached with the child's father several months prior. The key points of this agreement, which the parents hammered out over several weeks in the late summer of 2013, were twofold. First, Ms. May would relocate to the United States in September 2013 to begin a new job, establish a residence, and find a school for the child. And second, the child would remain in Argentina under the care of Ms. May's mother until completion of the 2013 academic year, which in Argentina ends in December, and then join his mother in the United States. The parties also agreed that Mr. Mendez would enjoy increased visitation with the child during his last few months in Argentina, and that visitation would continue in both Argentina and the United States after the child's relocation. Relying on this agreement, Ms. May moved to the United States in early September 2013. She began her job, rented a house with a room for her son, and found a school for him in Roslindale, Massachusetts. She kept Mr. Mendez appraised of her progress. Mr. Mendez, for his part, routinely availed himself of the additional visitation to which the parties had informally agreed. A few weeks before the end of the child's school year, Mr. Mendez Counsel, we do know the facts in this case. Can we get to some of the legal questions? Certainly. I recited those facts, Your Honor, because they're critical for an understanding of two of the three legal issues presented by this appeal. First, whether the parent's last shared intent was for the child to live in the United States, and second, whether Mr. Mendez, in fact, consented to the child's relocation. The district court here made a finding of fact that the father had orally agreed to the relocation of the child to America. Nonetheless, the district court found that even though there had been an agreement, somehow it wasn't a real agreement because the father, in the end, refused to sign the document that would have permitted the exit from the country. I understand you to say that is simply an error of law, that the Hague Convention does not work that way. I understand your argument to include the points that this was not an initial agreement, but an immediate revocation of the consent. This was your client acting in reliance on the consent, taking what were serious actions, and the attempt to revoke the consent coming months later. The district court, let's assume it committed error on that point. The district court made an opinion that said, even if the Hague Convention does not allow for revocation of consent after it is given, the court would, as a matter of discretion, nonetheless order the return of the child, notwithstanding that consent. I take it you are arguing, but I'm not sure I saw it in your reply brief, that that is simply another error of law. I am, Your Honor, and in fact, we believe that that is an abuse of discretion, and the reason is that the court based that exercise of discretion on a statement that Ms. May had removed the child in the middle of an ongoing custody proceeding in Argentina. The court, however, disregarded its own factual finding that that custody proceeding ongoing in Argentina was premised entirely upon a perjured filing that a petitioner had made. Okay. Now, this is where the record gets murky for me. The father brought criminal proceedings claiming he had been denied custody of the child, and his visitation rights. It seems to me clear in that proceeding he filed false evidence, and the criminal court judge responded by reducing his visitation rights. There was, however, an ongoing civil proceeding which was augmented by your client's petition to the Argentinian courts to give her authorization to remove the child. Were the false statements also filed in the civil proceeding, or was that judge, who I assume was different from the criminal judge, aware of the filing of the false statements? There were false statements as well filed in the civil proceeding, as the district court found, Your Honor. Specifically, the petitioner had alleged that my client had removed the child, had abandoned the child in Argentina and gone to the United States without any notice to him, which the district court found to be incorrect. Okay, but that representation was made to the civil court in Argentina. Now, in your reply brief, you say that the Argentine court order, I think it's in November, that she denying her petition and saying you should not remove the child, you say that order was entered ex parte and without due process? Is that correct? That's correct, Your Honor. How could it be entered ex parte when she had been before the court and had, as I understand the record, and had participated in a court-ordered mediation? She had actually not been before the court at the time that order was issued, Your Honor. The petitioner filed his perjured claim for an emergency custody action on November 27, 2013. While my client was in the United States pursuant to their relocation agreement, the Argentine civil judge then, relying on that perjured filing, issued his order the following day on November 28. So at that time, she had not had either notice or an opportunity to be heard. What was the last court hearing that she actually attended? Yes, Your Honor. Before or after these two things had happened? Subsequently, my client returned to Argentina for the consolidated civil actions before this judge. This was now in February of 2014. So I believe that might be the proceeding to which you were referring. But even at that proceeding, Your Honor, the civil judge did not address either the filing for emergency custody that the petitioner had made before him or his underlying order. He addressed only my client's request to enforce the party's previous parental agreement, which gave her the right to demand from the petitioner the necessary travel authorization. And he denied that? He did, ultimately, Your Honor. And did he, at that time, reiterate that she was not to remove the child? I believe so, Your Honor. Was the issue of consent to removal an issue before the Argentinian civil judge? It was not, Your Honor. So all of the previous... I'm looking at... emails, I've looked at Skype conversations, all of which were occurring at the same period of time. Those were not before the Argentinian judge? No, I do not believe so, Your Honor. What was before the Argentinian judge? Merely two things, Your Honor. First, the underlying November 27th action for emergency custody filed by the petitioner, which, as the district court found, contained numerous false statements. And second, my client's request of that judge to enforce their 2012 custody agreement, one of the provisions of which was that, on demand, the petitioner would provide her necessary travel authorization. Did your client argue to the Argentinian court that, apart from the 2012 agreement, there had been oral consent given by the father during that cafe meeting to allow the child to come to the U.S.? I don't have the transcript of the proceedings, but based on the testimony, no, I do not believe that came up. All right. As I read the convention, consent is a defense to return, sort of regardless of what the Argentinian courts have done, even if there is a maxia order or the equivalent? That's correct, Your Honor. And not only that, but a number of courts, specifically in the Second Circuit, have found that, notwithstanding its status as an affirmative defense, because the Hague Convention focused on the wrongful removal of a child, consent is actually a complete defense, and is actually, because of that, a part of a petitioner's prima facie case. I don't recall which Second Circuit case you're relying on, so either you tell us here or in a letter afterwards. Certainly, and it's also in my brief as well, Your Honor. Okay. Justice Souter? I have one question. We've been discussing consent as an affirmative defense. Does the consent under the convention, does the consent have any effect on the finding, or I'm sorry, on the resolution of the habitual residence issue? It absolutely does, Your Honor. The First Circuit standard and the standard of a number of circuits in this country is that the primary element in determining habitual residence is the party's last shared intent, which is essentially the other side of the coin of whether or not the petitioner in this case consented or not. I'm a little surprised by your answer. Whatever the habitual residence, if there was consent to taking the child to America, do we really need to get into the question of habitual residence? Only so far as it's another reversible error by the district court. Yes, but if it's reversible error on consent, do we need to answer the alternate ground of habitual residence? If this Court agrees with the district court that consent is a completely discretionary matter for the district court, then I think we do because habitual residence, in contrast to consent, is part of the prima facie case. Is there any law to say that consent is a discretionary defense subject to a trial judge? That's reflected in the district court order, specifically I think the footnote that you referred to, Your Honor. Yeah. Further questions? Not from me, thank you. Okay. Thank you. Ms. Cohen. Good morning, Your Honors. Your Honors, first off, Amber Cohen on behalf of Federico Mendez. I appreciate the Court's expedited hearing and also allowing us to be heard today. On that point, I take it that the district court judge was asked to stay the return order so this Court could decide the appeal. We may have given you an expedited hearing, but it still takes some time to decide a case. Is it correct the district court denied the stay request? That is correct, Your Honor. And therefore, if we need some time to decide this case, we would have to issue a stay order. That is correct. At this point, the return order, as per the findings and facts of the lower court, states that the child should be returned to Argentina on or before February 11th. We are to report to the lower court by Friday a return plan, a joint return plan. And have the parties discussed this matter? I have attempted to discuss this matter, Judge. I was told that they would not discuss until after this hearing. Okay. Well, I give you one more day to discuss it, whether there will be an agreement in light of the factors I pointed out. Report to us by 4 o'clock tomorrow, please. Thank you, Judge. Okay. Now, your argument. Your Honors, I'm shaking. I apologize. It's my first time in your court. This is an unfortunate set of circumstances that arises out of a family dispute in Argentina. The record is complete with facts that support the fact that Ms. May wanted to leave Argentina for quite some time. She wrote an article, I'm not sure if your Honor saw that, in the exhibits that was entitled, well, it's in the magazine Escape from America. And she writes in there, which the judge points out, that she has a date of December 8th, excuse me, December 3rd, 2025, and the significance of that date. That is the date that my child turns 18, and I can leave Argentina without signed authorizations from the father. That's her testimony, day three, page 123. I don't have an appendix, your Honors, and I apologize for that. Isn't that different from the crux of the matter here, perhaps, that your client agreed that the child could be brought to America, and that it was he who unilaterally determined that the child was not. I've looked at the record, the record is replete with his agreements that the child can come to America with her. And that he knew that she was, and she had talked to him about this new job that she was interested in taking. And he was fully aware of that. When she first approaches him in 2013, she has not found a job. You'll see the email in there that says, actually, she's looking for a job. She's not sure if it's going to be the United States or Brazil. And they attempt to go to arbitration, mediation, which is required. Which is one of the reasons why you haven't seen a complaint for relocation. Because she had previously filed the complaint for relocation in 2011. That petition was denied in the sense that they couldn't get through the required mediation under the rules of the Argentine Civil Court. Here again, they could not get through the mediation, which is required to file the complaint in order to have the courts hear it. So unfortunately, the relocation is a much higher standard for clear reasons than permission to travel. My client, to answer your question, Judge, my client, because of Ms. May's agitation and requests and sort of demands, you'll see, I think, that she's very strong with her language. She's going to go regardless of what he says. He attempts to try to work with her. And he says, if I can go, I would like to go with you. She sort of solicits, I'm going to get you a visa, a job. We'll work together to get you something in Boston. That falls through for my client. They then turn to an alternative plan, which is they're going to attempt to possibly buy continental parenting plan. My client discusses it. And he says, okay, the mother will be happier. Perhaps it will be a better situation. So he does agree on the record in an email, January 8th is the date I want to look at for removal. With that said, sort of what's going on simultaneously is the mother is not in Argentina. The mother is here already in Boston. So the agreement was not fully developed at that point. She had left. The agreement, it seems to me at least a fair reading of what I see in the record, is that there was an agreement to allow the child to relocate with the mother to the United States. And if I understand the record correctly, your client has brought a kidnapping claim in Argentina. Is that not correct? Judge, there was an investigation that was filed, yes. And so that if she, if the child is returned to Argentina, she might be under a significant impediment to going back to trying to get her rights vindicated. She still has custody under Argentinian law, as I understand it. She has physical custody, yes. There was testimony that says that they have shared legal custody, which is the issue here. In regards to the right to decide where the child lives. And that ultimately goes to the custody right issue. But if I may just back up a little bit to the habitual residence, Your Honor, and the shared intent. We had two experts testify that in fact you cannot, without a written agreement, verbal consent is not sufficient. It's not sufficient. And the reason it's not sufficient in these family law matters is because if you come to a court and say he said, she said matter every time. I got an email. I understand that, Judge, but it was not fully formed. Their agreement was not fully formed. They had not had the ability to work out the signed agreement, which talked about all of the points that are very instrumental when you're executing a parental plan. So what you're saying basically is that unless there was a written document, the fact that he had consented to the child coming to the United States, both by email and both in Skype conversations is insufficient. That's correct, Judge. And those emails posted after she left, she had left already. She had left. So my point is that she had left prior to an agreement fully forming regardless. She was leaving regardless. That's my point, is that it didn't matter. She wanted to have the child there. She left the child in Argentina. They had tried to negotiate. And frankly, Your Honors, in the record my client did a really, you know, was trying to attempt to really work with the mother on this point. And I do think you see that there. What happened was then the grandmother, the maternal grandmother started prohibiting my client from seeing the child. Now, there is some conflicting testimony about whether or not it was days that he was supposed to see the child per the agreement, the 2012 agreement. There was testimony from Ms. May that said that she would allow the father to see the child on additional days. When there was increasing tension, they revoked that time. That is something that you can't bring to a court to say they're taking away time that we agreed upon because it's not a clear order. I think there's a choice of law question inherent in your argument. You replied to Judge Stahl by saying Argentine law requires a written agreement signed by both parties. And that is why neither an oral statement nor an e-mail statement suffice. And therefore, the district judge made no error because he had to filter the consent issue through Argentine law. That's right, Your Honors, because they had multiple hearings in Argentina. Let's not forget there was an e-mail on October 23rd. The mother knew the father had completely decided this was not going to work because if we can't even work this, she's never going to send the child back to me. So the agreement had broken down. At that point you did hear testimony about my client filing emergency paperwork. Family law sometimes is akin to an emergency room. It's triage. That filing went in and one day noticed when she had come back she was served with the order not to file an emergency report. She returns February 10th for a full hearing before Judge Elizabeth in Argentina who, per the record, was the single justice that was hearing these family law matters. They had the opportunity at that point. She was merely asking to leave for 45 days. And the judge said no. In fact, the judge made her go register the child for school to start that term. May I continue? Yes, you may. To start that term, of which the parties did. She took the child. You see in email, it's Exhibit 30, Petitioner's Exhibit 30, that she said I've registered and I've paid, just pay me back. That's February 11th, 2014. Judge Elizabeth, after consideration and being told by both counsels, they were both represented at this hearing, that they could not come to an agreement, he decided that in the best interest of this child, the child needs to stay here. The travel for the 45 days was denied. Based even though that was in their agreement. Because that was in the best interest of the child. It was that night that Ms. May took this child. She abducted this child, took the child over the borders illegally. There's no question about it as far as Argentina is concerned. The child is still in Argentina. That is also, in my opinion, Your Honor, is very clear on the record. So you, your view, as I understand it, is that there was no effective consent and therefore his unilateral decision to vacate that verbal consent is okay. That's your position, I gather. Yeah, I struggle with the word unilateral because I think it's She obviously didn't agree with it. And I understand that, but I also think that she put him in a position where she was leaving regardless. He tried to work with her and in essence the agreement failed. These parties were not together. May I, did the Argentinian judge hear an argument that he had in fact consented and was that a necessary part of his ruling? It's my understanding that both parties were represented by counsel and that both were zealously advocating their client's position. Judge Elisabal was made aware and it was very clear on the record that Ms. May was living in the United States at that time. The party, Ms. May, specifically testified that she did not bring the issue of relocation up at that hearing because it was not properly before the court. The court was only there to analyze whether or not she could take that trip, the planned 45-day trip, which I think the court notes this has been much longer than a 45-day trip. This was, and my client also testified that in fact this was his fear that when she acted and sent the email saying I want to elect my 45-day travel that this is in fact why they had to go in for emergency orders and have a full hearing on the merits. What about the finding by the criminal judge that many of his claims were fraudulent? Well, you actually, Judge, there was multiple testimony from experts, both experts, in regards to the proceedings in Argentina. The family court was on a break. They take a month or two break so the criminal court is left to deal with these family matters and because they are not equipped or necessarily want to deal with them what they do is they just reduce temporarily the visitation, they don't let the child, that's the most important part, and generally speaking the cases always get dismissed because in essence they are really only there for, again, triage. They get dismissed but the question had to do with misrepresentations made by your client to an Argentinian court. Well, I don't, he, the testimony in regards to the civil court or the criminal? No, we'll start with the criminal court. The judge found, the lower court found that he made misrepresentations I believe to the civil court but in regards to the criminal court the issue that the complaints stemmed from were the prohibition of contact and so the question and the judge found that the days that he was saying he was not, he was asking for contact, that those weren't the days per the agreement, the civil court, misrepresentations made to the civil court. The civil court, we heard testimony from Irene Aguidacas who is the attorney for my client and she stated that she was not able to file the complaint in the emergency manner, that it was her partner that ended up filing the pleading and stated ultimately that they, because of sort of general complaint practice and I am summarizing the testimony judge but in essence that she wrote the mother had abandoned the child because they didn't know when she was coming back, she had not coordinated a return date. She hadn't told them that, yeah. Yeah, it wasn't. And the district court found that that was untrue. Well, and it wasn't, it hadn't been fully vetted yet either judge, the complaint, it's still an open complaint to be quite honest, that there is custody proceedings that are open in Argentina and you can see, I do, I did point and Judge El Azebal heard this and knows this and again the Hague is not to, the Hague Convention is not here to necessarily parse out the custody issues themselves, it's only to decide where these custody issues should in fact occur and your honors, my, just in closing I just would say that it's, the factual case on this is that this was an abduction it was against the court orders, the judge was very clear, no this is not in the best interest of the child, the mother took the child against wishes and in fact if you want to talk about misrepresenting, misrepresented to the father that it was going to be only 45 days, that was what she asked for and then misrepresented the fact that she was taking an in Argentina vacation for two weeks which ultimately created this it's a little different than a misrepresentation to a court I think well in my client's eyes your honor, when it's involving his son, it's a very important, and he made misrepresentations to a court in order to get a court order, I don't think that's a fair analysis your honor and the reason why I say that is not because he made intentional misrepresentations, he went on the, and I'm not saying his lawyer was right or wrong, he went on the advice of filing so that the child was to stay in Argentina and again when you're dealing on a one day notice and you're filing and you're writing, you write broadly, the mother they didn't know the return date, the abandonment, that's obviously she's here, she wants the child, that's very clear but this had not gone to trial, she didn't give the court the opportunity to make that decision, that's the decision for Judge Elazabal to make Justice Souter? I have no further questions, thank you. Alright, we have a minute of rebuttal I believe and if something catches you by surprise, we'll hear from you. Unless the panel has any further questions, I'll waive my rebuttal. Are there any further questions? No. Okay, this is a very difficult case. You've both done very well. The court appreciates the advocacy first time or not. We do expect you to take seriously my comments and advise us by 4 o'clock tomorrow whether you agree to further stay of removal while this court considers the matter. Okay, thank you.